**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.:

NATHANEL DEPOSKI :
First Plaintiff :
:
SKYBRIDGE ENTERPRISES LLC :
Second Plaintiff :
:
v. :
:
THE INDIVIDUALS, PARTNERSHIPS AND :
UNINCORPORATED ASSOCIATIONS :
IDENTIFIED IN SCHEDULE "A" :
:
Defendants :

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs hereby sue Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). All Defendants are knowingly and intentionally displaying, promoting, advertising, distributing, offering for sale, and selling infringing versions of Plaintiffs trademarked, patented, and copyrighted works (the "Unauthorized Products") on the Amazon.com online marketplace, operating under the seller identities and/or the online marketplace accounts as set forth on Schedule "A" hereto (the "Seller IDs" and collectively, the "Defendant Merchant Storefronts"). In support of its claims, Plaintiffs alleges as follows.

## I. NATURE OF CASE

1. Plaintiffs own the United States-issued design patent, registered copyrights, and registered trademarks identified in this Complaint. Defendants have infringed First Plaintiff's design patent in violation of 35 U.S.C. § 271, infringed First Plaintiff's copyrights in violation of 17 U.S.C. § 501, and infringed Second Plaintiff's registered trademarks in violation of 15 U.S.C. § 1114. Defendants have further engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1), as alleged in Count V. Each Defendant has infringed at least one of Plaintiffs' asserted intellectual property rights and/or engaged in the unfair or deceptive trade practices alleged herein.

## II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the claims in this action pursuant to the Federal Copyright Act, 17 U.S.C. §§ 101 et seq.; the Patent Act, 35 U.S.C. §§ 1 et seq.; and the Lanham Act, 15 U.S.C. §§ 1051 et seq., including 28 U.S.C. §§ 1338(a)–(b) and 1331.

3. This Court has supplemental jurisdiction over Plaintiff's FDUTPA claim pursuant to 28 U.S.C. § 1367(a), because that claim is so related to the federal claims that it forms part of the same case or controversy.

4. Defendants are subject to personal jurisdiction in this District pursuant to Section 48.193(1)(a)(2), Florida Statutes, because Plaintiffs' Intellectual Property Rights ("defined below") infringement claims arise from Defendants' commission of tortious acts within Florida. Defendants have offered for sale and sold products incorporating Plaintiffs' Intellectual Property Rights to consumers in Florida, including within this District. See *World Media Alliance Label, Inc. v. Believe SAS*, No. 24-12079 (11th Cir. July 28, 2025); *Ross v. Archer Publications Ltd.*, No. 24-20991-CIV-ALTONAGA/Reid (S.D. Fla. Jan. 18, 2025); *Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, No. 07-22066-Civ, 2008 WL 4724495, at *5 (S.D. Fla. Oct. 24, 2008)

5. Defendants structure their business activities to directly target consumers in the United States, including Florida, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers; offer

shipping to the United States, including Florida; accept payment in U.S. dollars; and, on information and belief, have sold products using infringing and counterfeit versions of Second Plaintiff's federally registered trademarks, unauthorized copies of First Plaintiff's federally registered copyrighted works, and products that infringe First Plaintiff's design patents., including the distinctive characters embodied therein to residents of the United States. Each of the Defendants is committing tortious acts in the United States and Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the United States, including in Florida.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including the sale of the Unauthorized Products.

## III. INTRODUCTION

7. The First Plaintiff, NATHANEL DEPOSKI ("First Plaintiff"), is an individual domiciled in the State of New Jersey, residing at 20 Stanley Ct, North Haledon, New Jersey 07508. First Plaintiff is the inventor and owner of intellectual property rights associated with the Puking Ball product (the "Puking Ball"), including First Plaintiff's Content and First Plaintiff's Design Patent (as defined below). The Puking Ball is a novelty toy designed to simulate the act of vomiting. The product consists of a spherical body containing a mechanism and material that produces a simulated vomiting effect when squeezed or otherwise activated, after which the material is drawn back into the toy. First Plaintiff markets and sells the Puking Ball as a novelty toy intended to entertain consumers through its distinctive appearance and functionality.

8. The Second Plaintiff, SKYBRIDGE ENTERPRISES LLC ("Second Plaintiff"), is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business located at 20 Stanley Ct, North Haledon, New Jersey 07508. Second Plaintiff is wholly owned by First Plaintiff, NATHANEL DEPOSKI, and owns the trademark rights associated with the Puking Ball product (the "Puking Ball"), as further defined below.

9. Plaintiffs sell, distribute, promote, and market Puking Ball products through several online channels, including Plaintiffs' Website and their accounts or stores on Google, TikTok, Amazon, Facebook, Threads, YouTube, Instagram and Pinterest.[1]

## FACTS AND BACKGROUND

10. Plaintiffs filed this case to prevent e-commerce store operators who trade upon Plaintiffs' reputation and goodwill from further selling or offering for sale the Unauthorized Products. Defendants create e-commerce stores on www.amazon.com under one or more Seller Aliases and then advertise, offer for sale, and/or sell the Unauthorized Products to unknowing consumers.

11. On information and belief, the Amazon seller accounts identified in Schedule A are operated by the same individuals or entities, or by individuals or entities acting in concert. The accounts share common features, including identical or substantially similar product listings, photographs, promotional graphics, descriptions, search terms, product designs, and pricing. Products purchased from the accounts were shipped from China, and in certain instances list the same manufacturer. These similarities and connections, together with the accounts' concurrent offering of the Unauthorized Products, support the inference that the accounts are commonly owned, controlled, or operated, or are acting in concert. Plaintiffs identify examples in the supporting declaration and exhibits, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

12. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiffs' intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing the Unauthorized Products over the Internet. Plaintiffs have been, and continues to be, irreparably damaged

---

[1] Plaintiffs' Website: www.pukingball.com; TikTok: tiktok.com/@thepukingball; Amazon: amazon.com/stores/PukingBall; Facebook: facebook.com/pukingball; Threads: threads.com/@pukingball; YouTube: youtube.com/channel/UC9wwXd0D5_NJxb6XoIIbqww; Instagram https://www.instagram.com/pukingball/ Pinterest: pinterest.com/pukingball.

through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted works because of Defendants' actions and therefore seeks monetary relief

*The Puking Ball Toy*

13. First Plaintiff created the Puking Ball toy in 2022, during the height of the COVID-19 pandemic, as a novelty toy designed to provide humor and immediate entertainment through a simulated vomiting effect. The Puking Ball toy produces a distinctive visual effect in which slime is “vomited” from the toy and then “sucked” back into it. Following its introduction, the Puking Ball became a viral sensation across social media platforms, including Instagram, Facebook, YouTube, and TikTok, generating more than one billion views.

14. Following its initial success, First Plaintiff expanded his product range to include a number of additional “gross out” toys, including but not limited to the Snot Rocket, Puking Dumpling, Puking Ornament, Puking Avocado, Puking Pickle, Puking Poo and Mega Puking Ball.

*Plaintiffs’ Intellectual Property Rights*

15. The “PUKING BALL” trademark was registered with the United States Patent and Trademark Office (“USPTO”) on October 13, 2023. A copy of the trademark certificate is attached hereto marked Exhibit 1 ("Second Plaintiff's Trademark")

16. First Plaintiff owns the following works related to Puking Ball, each of which is registered with the United States Copyright Office. The corresponding copyright registration certificates are attached to this Complaint as Exhibits 2.1 through 2.7.:

| Registration Number | Title of Work | Date of Registration | Exhibit |
|---|---|---|---|
| VAu 1-472-471 | Puking Ball, sculptural work<br><br>("Puking Ball Product") | May 12, 2022 | 2.1. |
| PA0002449431 | Squishy Puking Ball Video | December 4, 2023 | 2.2. |
| PA0002380890 | Puking Ball Video 1 | November 19, 2022 | 2.3. |
| PA000238478 | Puking Ball Video 2 | November 19, 2022 | 2.4. |

| | | | |
|---|---|---|---|
| PA0002383294 | Puking Ball Video 3 | December 6, 2022 | 2.5. |
| PA0002439227 | Puking Ball Video 4 | September 30, 2023 | 2.6. |
| PA0002490049 | Puking Ball Video 5<br><br>(Exhibits 2.2. to 2.7 collectively Referred to as "First Plaintiff's Content") | August 2, 2024. | 2.7. |

17. First Plaintiff owns U.S. Design Patent No. US D 986,350S, titled "Squish Toy" which was duly issued by the USPTO on May 16, 2023. A copy of the patent is attached as Exhibit 3 ("First Plaintiff's Design Patent"). The patent is valid and subsisting. Under 35 U.S.C. § 282, the patent is presumed valid, and First Plaintiff holds the right to exclude others from making, using, offering to sell, selling, or importing products that infringe the patented design. See 35 U.S.C. §§ 154(a)(1), 171.

18. Second Plaintiff's Trademark, The Puking Ball Product, First Plaintiff's Content and First Plaintiff's Design Patent are hereafter collectively referred to as Plaintiffs' Intellectual Property.

19. Plaintiffs have expended substantial time, money, and other resources on advertising and promoting the Plaintiffs' Intellectual Property.

20. U.S. registrations for the Second Plaintiff's Trademarks are valid, subsisting, and in full force and effect. The registrations for the Second Plaintiff's Trademarks constitute prima facie evidence of their validity and of Second Plaintiff's exclusive right to use the Second Plaintiff's Trademarks pursuant to 15 U.S.C. § 1057(b).

21. The U.S. copyright registrations for the Puking Ball Product and First Plaintiff's Content are valid, subsisting, and in full force and effect. For each work registered before or within five years after its first publication, the registration certificate constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate, pursuant to 17 U.S.C. § 410(c).

22. The U.S. design patents identified in this Complaint are duly issued, valid, and subsisting. Each claim of each patent is presumed valid pursuant to 35 U.S.C. § 282(a).

## DEFENDANTS' UNLAWFUL CONDUCT

23. Defendants are unknown individuals and business entities who own or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiffs. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

24. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their network. If Plaintiffs provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

25. Recently, Plaintiffs have identified many fully interactive e-commerce stores offering the Unauthorized Products on online marketplace platforms like Alibaba Group Holding Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), Dhgate.com ("DHGate"), eBay, Inc. ("eBay"), Roadget Business PTE Ltd. ("SHEIN"), WhaleCo, Inc. ("Temu"), Walmart, Inc. ("Walmart"), and Context Logic, Inc. d/b/a Wish.com ("Wish"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this judicial district and throughout the United States.

26. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores including, and possibly not limited to, those listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

27. This lack of precise information notwithstanding, it is well established that e-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. See Exhibit 4, Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping

containers). Id ¶15. Over 85% of CBP seizures originated from mainland China and Hong Kong. Id.¶16 Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. Id.¶7.

28. Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Exhibit 5, Daniel *C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as Exhibit 6, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Id ¶11 Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. Exhibit 6 at 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. Exhibit 6 at 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 5** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." Id. at 161.

29. Defendants, individually or jointly, have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including to Florida; accept payment in U.S. dollars; and, on information and belief, sell the Unauthorized Products to residents of Florida.

30. Defendants, individually or jointly, concurrently market and distribute the Unauthorized Products through AMAZON, where they maintain similar seller profiles and storefronts. For example, Defendants facilitate sales by designing AMAZON stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendants also concurrently employ and benefit from similar advertising and marketing strategies. Specifically, Defendants target the same audience, consumers of genuine Puking Ball Products, through the advertisement of squishy toys. Defendants'

Unauthorized Product listings also feature similar, and in some cases identical, product photos, promotional language, and pricing.

31. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiffs have not licensed or authorized Defendants to use any of the Plaintiffs's Intellectual Property, and none of the Defendants are authorized retailers of the Puking Ball Product.

32. The Defendants also deceive unknowing consumers by using the Second Planitiff's Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to the Puking Ball Product. Other e-commerce stores operating under the Seller Aliases omit using the Second Plaintiff's Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for the Puking Ball Product.

33. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

34. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling the Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

35. The e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of

being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

36. Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiffs' enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.

37. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale or sell the Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used, and continue to use, the Plaintiff's Intellectual Property in connection with the advertisement, distribution, offering for sale, or sale of Unauthorized Products into the United States and Florida over the Internet.

38. Defendants' unauthorized use of the Plaintiffs' Intellectual Property in connection with the advertising, distribution, offering for sale, and/or sale of the Unauthorized Products into the United States, including Florida, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## CLAIMS FOR RELIEF

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

39. The Unauthorized Products contain or constitute unauthorized copies of the Puking Ball Product and/or First Plaintiff's Content of authorship, including sculptural works, pictorial and graphic works, and audiovisual works, as defined under 17 U.S.C. § 102(a)(5), (6), and (2), respectively, and include works of authorship fixed in a tangible medium of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Puking Ball Product and First Plaintiff's Content constitute original intellectual property eligible for copyright protection under 17 U.S.C. § 102(a).

40. Pursuant to 17 U.S.C. § 101, "publication" means when copies or phonorecords of the work are distributed to the public by sale or other transfer of ownership, rental, lease, or lending, or when an offer is made to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display. The display of a work to the public does not, by itself, constitute publication in every instance.

41. Pursuant to 17 U.S.C. § 106(1) and (3), the owner of a copyright has the exclusive rights to reproduce the copyrighted work and to distribute copies of the work to the public. Under 17 U.S.C. § 501, any person who violates any of the exclusive rights of the copyright owner, as provided under 17 U.S.C. §§ 106–122, is an infringer of the copyright.

42. First Plaintiff is the owner of valid copyrights in First Plaintiff's sculptural work and audiovisual content, including the works identified herein. First Plaintiff's copyrighted works are original works of authorship fixed in tangible mediums of expression and are entitled to protection under the Copyright Act. Defendant, without authorization from First Plaintiff, has reproduced, distributed, offered for sale, and/or publicly displayed copies of Puking Ball Product and/or First Plaintiff's Content, including products incorporating or reproducing Puking Ball Product and/or the unauthorized copying and publication of First Plaintiff's Content, videos, and other protected content on Defendants online store and/or website. Defendants' conduct infringes First Plaintiff's exclusive rights under 17 U.S.C. § 106 and constitutes copyright infringement under 17 U.S.C. § 501.

43. Pursuant to 17 U.S.C. § 502(a), this Court may grant temporary and final injunctions on such terms as it deems reasonable to prevent or restrain infringement of a copyright.

44. Without any authorization from First Plaintiff, or right under the law, Defendants have unlawfully distributed the Puking Ball Product and First Plaintiff's Content by transmitting unauthorized copies of those works to users in violation of the Copyright Act, 17 U.S.C § 106.

45. The foregoing acts have been intentional, willful, and purposeful in disregard of and indifferent to the First Plaintiff's rights.

46. As a direct and proximate result of Defendants' infringement of First Plaintiff's exclusive rights under copyright, First Plaintiff is entitled to damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

47. Alternatively, the First Plaintiff is entitled to the maximum statutory damages, in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c) or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

48. Pursuant to 17 U.S.C. § 505, First Plaintiff requests that the Court award it its full costs and a reasonable attorney's fee incurred in connection with this action.

49. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause the First Plaintiff great and irreparable injury that cannot be fully compensated for or measured in money. First Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, the First Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringements of its copyright and exclusive rights under copyright.

## COUNT II
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

50. In addition to the claims of copyright infringement this is a trademark infringement action against certain Defendants, based on their unauthorized use in commerce of counterfeit imitations of the Second Plainitiff's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Second Plaintiff's Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Puking Ball Product offered, sold, or marketed under the Second Plaintiff's Trademarks.

51. Certain Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the Second Plaintiff's Trademark without Second Plaintiff's permission.

52. Second Plaintiff owns the Second Plaintiff's Trademark. The United States registrations for the Second Plaintiff's Trademark are in full force and effect. The registrations on the Principal Register constitute prima facie evidence of the validity of the registered marks, Second Plaintiff's ownership of the marks, and Second Plaintiff's exclusive right to use the marks in commerce in connection with the goods or services identified in the registrations, pursuant to 15 U.S.C. § 1115(a). Upon information and belief, certain Defendants have knowledge of Second Plaintiff's rights in the Second Plaintiff's Trademark and are willfully infringing those rights by using unauthorized and counterfeit versions of the marks. Those Defendants' unauthorized use is likely to cause, and is causing, confusion, mistake, or deception as to the origin, sponsorship, or approval of the Unauthorized Products, in violation of 15 U.S.C. § 1114(1)(a).

53. Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54. Second Plaintiff has no adequate remedy at law, and if certain Defendants' actions are not enjoined, Second Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Second Plaintiff's Trademark.

55. The injuries and damages sustained by Second Plaintiff have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT III
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

56. Plaintiffs realleges and incorporates by reference paragraphs 1 to 37 of this Complaint as if fully set forth herein.

57. Second Plaintiff owns the Second Plaintiff's Trademarks and has the right to use those marks in commerce in connection with the goods identified in the registrations. The registrations for the Second Plaintiff's Trademarks on the Principal Register are in full force and effect and constitute prima facie evidence of the validity of the registered marks, Second Plaintiff's ownership of the marks,

and Second Plaintiff's exclusive right to use the marks in commerce in connection with the goods identified in the registrations, pursuant to 15 U.S.C. § 1115(a).

58. Certain Defendants' promotion, marketing, offering for sale, and/or sale of the Unauthorized Products is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of those Defendants with Second Plaintiff, or as to the origin, sponsorship, or approval of the Unauthorized Products by Second Plaintiff, in violation of 15 U.S.C. § 1125(a)(1)(A).

59. By using the Second Plaintiff's Trademarks in connection with the offering for sale and/or sale of the Unauthorized Products, certain Defendants have used false designations of origin and made misleading representations likely to cause confusion or mistake, or to deceive consumers as to the origin, sponsorship, or approval of the Unauthorized Products, in violation of 15 U.S.C. § 1125(a)(1)(A).

60. Certain Defendants' conduct involves the use of counterfeit marks and constitutes a willful violation of 15 U.S.C. § 1125(a)(1)(A) and, if the marks are registered and the facts support it, 15 U.S.C. § 1114(1)(a).

61. Unless enjoined, certain Defendants' conduct will continue to harm Second Plaintiff's reputation and the goodwill associated with the Puking Ball brand. Second Plaintiff seeks injunctive relief pursuant to 15 U.S.C. § 1116(a).

## **COUNT IV**
## **DESIGN PATENT INFRINGEMENT (35 U.S.C. §§ 271, 281)**

62. Plaintiffs realleges and incorporates by reference paragraphs 1 to 37 of this Complaint as if fully set forth herein.

.

63. First Plaintiff's Design Patent is valid and enforceable. Under 35 U.S.C. § 282, the patent is presumed valid.

64. First Plaintiff's Design Patent claims the ornamental design for a squish toy, as shown and described in the patent's drawings.

65. Without First Plaintiff's authorization, Defendants had made, used, offered for sale, sold, or imported products that embody the patented design, or a design that is substantially the same in the eyes of an ordinary observer, thereby infringing First Plaintiff's Design Patent under 35 U.S.C. § 271.

66. Upon information and belief, Defendants had actual notice of First Plaintiff's Design Patent and its infringement before or during the acts alleged herein. Defendants infringement has been willful and deliberate.

67. As a direct and proximate result of Defendants infringement, First Plaintiff has suffered and will continue to suffer irreparable harm, including lost sales, loss of market share, and harm to its goodwill. First Plaintiff seeks preliminary and permanent injunctive relief under 35 U.S.C. § 283.

68. First Plaintiff is entitled to recover damages adequate to compensate for the infringement, in no event less than a reasonable royalty, under 35 U.S.C. § 284. First Plaintiffs also seeks, as applicable, the infringer's total profit under 35 U.S.C. § 289, subject to proof and the statutory requirements. First Plaintiff does not seek duplicative recovery.

69. To the extent Defendants' infringement was willful, First Plaintiff seeks an increase in damages under 35 U.S.C. § 284. First Plaintiff also seeks reasonable attorney's fees under 35 U.S.C. § 285 if this case is found to be exceptional, along with costs and any other relief the Court deems proper.

## COUNT V

## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Fla. Stat. §§ 501.201–.213)

70. Plaintiffs reallege and incorporate by reference paragraphs 1 through 37 of this Complaint as if fully set forth herein.

71. At all relevant times, Plaintiffs and Defendants were engaged in trade or commerce, as defined by Fla. Stat. § 501.203(8).

72. Defendants' promotion, marketing, offering for sale, and/or sale of the Unauthorized Products constitutes unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204(1).

73. Defendants' conduct is likely to mislead consumers acting reasonably under the circumstances, including by causing confusion or misunderstanding as to the source, affiliation, connection, sponsorship, or approval of the Unauthorized Products.

74. As a direct and proximate result of Defendants' FDUTPA violations, Plaintiffs have suffered actual damages, including lost sales and profits resulting from the diversion of consumers to Defendants' Unauthorized Products, and injury to the value of Plaintiffs' goodwill caused by consumer confusion. Plaintiffs also face continued harm from Defendants' ongoing conduct.

75. Plaintiffs are entitled to declaratory and injunctive relief under Fla. Stat. § 501.211(1), enjoining Defendants from continuing the unlawful acts and practices alleged herein.

76. To the extent Plaintiffs prove a loss resulting from Defendants' FDUTPA violations, Plaintiffs seek actual damages, together with reasonable attorney's fees and costs as permitted by Fla. Stat. §§ 501.211(2) and 501.2105, and any other relief the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs prays for judgment against Defendants as follows:

A. That certain Defendants account for and pay to Second Plaintiff all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Second Plaintiff's Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

B. In the alternative, that Second Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $1,000,000 for each and every use of the Second Plaintiff's Trademarks.

C. As a direct and proximate result of Defendants' infringement of the Puking Ball Product and Plaintiff's Content, First Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

D. Alternatively, and at First Plaintiff's election prior to any final judgment being entered, First Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

E. As a direct and proximate result of Defendants' infringement of First Plaintiff's Design Patent, First Plaintiff is entitled to recover damages adequate to compensate for the infringement, but in no event less than a reasonable royalty, pursuant to 35 U.S.C. § 284.

F. To the extent applicable, First Plaintiff is entitled to recover each infringing Defendants' total profit from the sale of articles of manufacture to which the patented design was applied, pursuant to 35 U.S.C. § 289. First Plaintiff does not seek duplicative recovery of damages and profits for the same infringement.

G. To the extent Defendants' patent infringement was willful, First Plaintiff seeks an increase in damages of up to three times the amount assessed, pursuant to 35 U.S.C. § 284.

E. Plaintiffs is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505, 35 U.S.C. § 285 and 15 U.S.C. § 1117(a); and

F. Award any and all other relief that this Court deems just and proper.

Dated: November 13, 2026

By: /s/ Cristian A. Rodriguez
Cristian A. Rodriguez
Florida Bar No.: 1059048
Rotek Law
95 Merrick Way, 3rd Floor
Coral Gables, 33134
Email: crodriguez@roteklaw.com

Phone Number: (305) 731-2593

*Attorney for The Plaintiff*

**Schedule A**

This page is the subject of Capcom's contemporaneously prepared Motion to File Schedule A to the Complaint Under Seal, which Capcom intends to promptly file upon the assignment of this civil case. Accordingly, this page has been redacted pursuant to L.R. 5.4(b)(1).